Ashburn, J.
It is conceded by plaintiffs in error that if the deed was executed by Dickerson to Slutz to secure the payment of a debt, then in equity it was, and now is, a mortgage. If, on the other hand, it was a sale of land, free from any relation of creditor and debtor in the transaction, then the deed is what it purports to be, an absolute conveyance. The conclusion we have reached renders it unnecessary to consider any question in relation to the rights of Larue.
*376 A mortgage, when in form a deed absolute, and a conditional sale are frequently so nearly allied to each other that it is sometimes difficult to say whether a particular transaction is the one or the other. The distinctive difference, however, appears to be this : The former is a security for a debt; the latter a purchase of land for a price paid or to be paid, to become absolute on the occurrence of a particular event, or is a purchase accompanied by an agreement to resell in a given time for a given price. It is this latter kind that traverses so nearly the boundary line of being a mortgage. Courts of equity, having a tender regard for the equity of redemption, lean slightly toward declaring them mortgages in doubtful eases. Yet there is no rule in law or equity why sales of land, when fairly made, should not assume the conditional form. It may at times, on a given state of facts, be difficult to ascertain the true character of the transaction, but when once determined to be a conditional sale, the transaction should be carried out between the parties as such. 1 Devereux Eq. 376; 4 Kent Com. (12 ed.) *144, note d.
In Goodman v. Grierson, 2 Ball & Beatty, 274, the leading question was whether the transaction was a mortgage or a conditional sale. The Lord Chancellor says: “ The question is, was this conveyance intended to be a mortgage or a sale of these lands ? ” He then gives the rule by which this question may be, in a given case, determined, and says: “ The fair criterion by which a court is to decide whether a deed be a mortgage or not, I apprehend to be this: Are the remedies mutual and reciprocal ? Has the defendant all the remedies a mortgagee is entitled to ? ” If he has, it is a mortgage ; if he has not, theu it is a deed. A mortgage secures a debt, and in connection with it, there must be an accompanying personal liability — such a personal liability that, if a sale of the mortgage security does not realize enough to pay the debt secured, there may be a judgment over against the mortgagor. Where no such personal liability attends the transaction, the deed covers a sale, and is not a mortgage.
*377 In Conway’s Ex’rs v. Alexander, 7 Cranch, Chief Justice Marshall says: “ The inquiry must be whether the contract in the specific case is a security for the repayment of money or an actual sale. If a security in the nature of a mortgage is intended, it is necessary that the mortgagee should have a remedy against the person of the debtor. If this remedy really exist, its not being reserved in terms will not affect the case; but the remedy must exist in order to justify a construction which overrules the express words of the instrument.”
This American rule is in harmony -with the rule in England, as announced in Goodwin v. Grierson, and will be found to be the rule as recognized in most of the states. We will refer to but a few of the reported cases.
In Robinson v. Cropsey et al., Edwards Ch. 138, it was held:
“ Where the debt forming the consideration for the conveyance is extinguished at the time by the express agreement of the parties, or the money advanced is not paid by way of a loan so as to constitute a debt or liability to repay it, but, by the terms of the agreement, the grantor has the privilege of refunding or not at his election, then it must be deemed purchase-money, and the transaction will be a sale upon condition, which the grantor will defeat •only by a repurchase or the performance of the condition on his part within the time limited for the purchase, and in this way entitle himself to a reconveyance of the property.”
The same doctrine controls in the decision of Sloway v. McMurry et al., 27 Mo. 113.
In the case of Saxton v. Hitchcock et al., 47 Barb. S. C. 220, it was held: “ To constitute a deed absolute on its face a mortgage, it must be made to appear from the instrument itself or otherwise, that the transaction was originally intended as a money security — that it was in fact a mere loan of money. If there be a sale with an agreement to repurchase within a given time, then it is not a mortgage, hut a conditional sale.”
*378 The course of decisions in this class of cases indicates that courts are vigilant to discover whether a condition of defeasance in law or fact attaches to the deed absolute in form. To this end they scrutinize the prior pecuniary relations of the parties, each toward the other; contemporaneous acts bearing on the question ; all after acts and admissions of the parties that are competent to be considered as evidence in relation to the transaction; any material inadequacy of consideration, and the terms of any written agreement entered into by the parties.
This brings us to a consideration of the facts of this ease as presented by the bill of exceptions, and an application of the legal principles we have been considering. It is proper to say that parol evidence may be received and considered, as tending to show the intention of the parties and the true character of the transaction.
And first as to the written agreement.
It is claimed that the fact that the deed and agreement were executed on the same day, shows that they were executed simultaneously, and therefore are parts of one transaction, and shows conclusively that the agreement to repurchase was intended, between the parties, as a defeasance to the deed, and not as an independent contract of sale. No such conclusion necessarily arises. It is a circumstance to be considered in that direction, but not conclusive. The deed and agreement were doubtless both talked over, and the terms of the contract settled before they were executed; yet, from all that appears on the face of the papers, they are as independent of each other as if agreed upon and executed on different days.
It is claimed that Slutz’s possession of the land under the deed, in fact, commenced after the expiration of the two years, and failure of Dickerson to pay. The agreement provides : “ And upon the failure on the part of said Dickerson to make such payment at or before the time specified, the premises are to remain fully in the possession of the aforesaid Slutz, according to the conditions of the deed, . . . and this article to be then void. The premises *379 are to remain in possession of said Joseph Slutz from this date,” etc. Under the deed Slutz’s possession and right to possession were absolute, save for the agreement. But as Dickerson, under the agreement, had a right of repurchase ■within two years, the possession of Slutz was subject to be defeated upon Dickerson’s complying with the terms of his option. It was, then, in harmony with the purposes of a conditional sale to provide, in case Dickerson failed to comply with the terms, of repurchase, that Slutz thereafter should hold possession in accordance with the conditions of the deed. "When Dickerson’s option expired, Slntz’s possession, under the deed, became absolute as against a repurchase under the terms of the conditional sale.
The final provision of the contract, that “ Slutz is to take reasonable care, and not suffer fruit trees to be destroyed, nor use timber more than may be necessary for the use of the place, and for all real improvements made on the premises by Slutz, he is to have reasonable compensation,” applies with equal force whether the transaction was a mortgage or conditional sale. If he complied with the conditions of repurchase, he would reasonably desire to have the land returned to him in as good condition as when he parted with it.
It is intimated that Slutz concealed the contract from the plaintiffs to accomplish a wrong. This is not disclosed in the evidence. The proofs show that the writings were acknowledged before an officer by the name of Craig, and the agreement placed by the parties in the hands of Joseph Hall; that the children of Dickerson remained in Jackson township, where the land was located, and that the matter of the agreement and title to the land was a subject of conversation about the time of Dickerson’s death.
Five hundred and fifty dollars was the consideration named in the deed. There is no proof to show that Slutz paid less for the land. On the trial, seventeen witnesses were called and testified as to the value of the land free of dower in 1850. The average value of the land, as placed by the witnesses, would be about seven hundred and thirty *380 •dollars; and, as affecting the value and sale of the land, a local milk-sickness was a standing obstacle. So that the difference between the estimated value and the price paid for the land can have no appreciable influence upon the question at issue.
About the year 1850 the gold fields of California were very alluring to men in the States. Men restless from any •cause, perhaps embarrassed, yet sanguine of speedily acquiring a fortune and returning to their homes, would sacrifice much for an outfit. The proofs show that Dickerson was one of that number. He sold his farm to Slutz, secured the right to repurchase within a period of two years, and made provision, if he did comply with his •option to repurchase within the time limited, the land should be returned to him in as good condition as when he parted with it. He then had no hesitancy in believing that he would be able to comply with all the terms of the repurchase 'agreement.
No great reliance can be placed on the testimony of witnesses who detail casual conversations heard by them near a quarter of a century prior to the time they testify. "We think, however, the weight of that kind of testimony, as shown by the bill of exceptions, tends strongly to show a conditional sale, and, when considered in connection with the written agreement, clearly so.
Wingate testifies: “ I was at Mr. Slutz’s one day, and Mr. Dickerson came there and was trying to sell his land to Mr. Slutz, and they talked about the deed, and there was a little difference between them as to price. This was in the winter that Dickerson went to California. And nothing was said between them about borrowing money— one was talking about selling, the other about buying ; and I know they were talking about the sale of the land now in controversy. No bargain was made in my hearing.”
McClure testifies : “ I was well acquainted with Dickerson, and he told me he had sold his farm to Joseph Slutz and was going to California.”
*381 Eields testifies : “ Dickerson came to my house to get me to take his girl before he started to California, and said to me that‘ he had sold his farm to Mr. Slutz, and was going to California.’ ”
Plaintiff' introduced ¥m.' Akerman to testify to what he heard Dickerson say. As Slutz was not present when the alleged declarations were made, the testimony is incompetent. It appears, however, in the bill of exceptions without objection. It has about as much force against as for the plaintiffs’ claim, and is as follows :
“ Immmediately before Mr. Dickerson went to California, I had a conversation with him. He told me that he had expected to borrow the money from Mr. Slutz, and secure him by mortgage upon his farm ; but Slutz had gone back on him and refused to lend the money, so that he had to sell him the land. On his return he was to get the land back. Slutz had played off on him.
“ He told me at the same time that he had got an article -from Slutz, so that he could get the land again if he paid the amount and interest within two years.”
Peter Davis testifies : ■“ Slutz told me that he had let Dickerson have the money to go to California on, and took security on the place.
“ Nobody was present except Slutz and I; Slutz told me that Franklin Dickerson had mortgaged the farm to him Slutz stated to me that if Dickerson never came back, Slutz was to have the land.”
Slutz, defendant, testifies: “ I have no recollection of having conversation with Peter Davis to which he testified. Never told Peter Davis that Dickerson had obtained the money and given security on the land. Never had such conversation with Peter Davis or any one. The plaintiff', Rachel Desenberg, lived right there with Squire Hall until she was twenty-one, when she married, and still continued to live in that neighborhood ever since ; the other lives inPickaway county. From the time I bought'of Dickerson, the plaintiff's never made any claim or demand against *382 me until a short time before this land was bought by Larue.”
Jacobs testifies : “ Have lived in Allen county thirty-four years; served as county treasurer from 1841 to 1854. The public reputation of that neighborhood for milk-sickness was bad.”
Huffman testifies: “There was then a great prejudice against that neighborhood on account of milk-sickness— and about as much about improved farms as wild land— and continued until after Dickerson sold his land, and still exists.”
Looking at the facts of the case, it was one where there was no prior existing debt; no contemplated loan of money ; no personal liability of the grantor; no stipulation on the part of Dickerson to pay money that Slutz could enforce against him on any default. The actual money transaction between the parties began and ended March 12, 1850. The deed was absolute on its face, and no sufficient reason appears why it should not now remain so. Dy the agreement the grantor acquired an option to repurchase the land in a given time for a given sum. He failed to comply with the terms of the agreement, and lost his option. The law is :
If the transaction is a conditional sale, the party seeking a reconveyance to himself must comply with the conditions imposed on him, or the property will be lost to him. Slowey v. McMurry et al., 27 Mo. 313; Saxton v. Hitchcock et al., 47 Barb. S. C. 220.
It is a case, then, in which one party considered himself as making a purchase, and the other appears to have considered himself as securing.to himself a conditional sale, to become effectual on his paying a certain sum of money in a given time. As we coincide with what appears to have been the transaction, as understood by the parties when made, we hold that the district court erred in declaring the deed to he a mortgage.

Judgment reversed and cause remanded.